**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

CLINTON LAUGHRIN,

       Defendant - Appellant.

No. 04-2207

---

**ORDER**
Filed March 16, 2006

---

Appellant's motion to clarify the opinion of March 2, 2006, is granted. The amended opinion, filed nunc pro tunc to March 2, 2006, is attached to this order.


Entered for the Court
Elisabeth A. Shumaker, Clerk


By:
       Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CLINTON LAUGHRIN,

Defendant - Appellant.

No. 04-2207

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-03-127 JC)**

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **MURPHY** , **HOLLOWAY** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Clinton Laughrin was driving his car in Lovington, New Mexico, on December 31, 2001, when he was stopped by Officer Brad Riley of the Lovington

Police Department. During the stop Officer Riley discovered a sawed-off shotgun in the car. Mr. Laughrin was later indicted in the United States District Court for the District of New Mexico on six weapons charges, three of which (Counts I, III, and IV) were based on possession of the sawed-off shotgun. Mr. Laughrin moved to suppress the gun on the ground that the traffic stop violated the Fourth Amendment. The district court denied the motion, and Mr. Laughrin was eventually convicted by a jury on all six counts. He appeals the denial of his motion to suppress, contending that Officer Riley lacked reasonable suspicion to stop his car. He also contends that the district court erred in sentencing him when it applied a two-level enhancement for possessing a firearm with an altered or obliterated serial number. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). Agreeing with both of Mr. Laughrin's contentions, we reverse and remand.

## I.     MOTION TO SUPPRESS

On the evening of December 31, 2001, Officer Riley recognized Mr. Laughrin buying gas at a convenience store in Lovington. When Mr. Laughrin drove away from the convenience store, Officer Riley followed him for about one-half mile, during which time he observed no traffic violations. Nevertheless, he decided to stop Mr. Laughrin. He based this decision solely on his knowledge of Mr. Laughrin's driving record. Officer Riley testified that he

had had about 10 contacts with Mr. Laughrin during his tenure on the Lovington police force. "Some [of these contacts] were traffic violations—no driver's license or speeding or things like that—some were assisting other officers with warrant service or taking reports." R. Vol. IV at 4. When asked at the suppression hearing whether he had ever "stop[ped] Mr. Laughrin when he was driving on a suspended license" and whether that had "happen[ed] on more than one occasion," Officer Riley responded affirmatively but did not indicate when or how many times it had occurred. R. Vol. IV at 5. The most recent prior encounter must have been before Officer Riley had left for training at the police academy 22 weeks earlier, because he had not seen Mr. Laughrin since his return. Officer Riley also testified that "other officers had the same experience with Mr. Laughrin," R. Vol. IV at 5, but he offered no specifics.

After Mr. Laughrin pulled to the side of the road, Officer Riley asked him for his license, insurance, and registration. Mr. Laughrin responded that he did not have those documents with him. Officer Riley informed Mr. Laughrin that he had stopped him for driving with a suspended license, to which Mr. Laughrin replied that he currently had a valid driver's license, although he did not have it with him. While he was talking with Mr. Laughrin, Officer Riley looked inside Mr. Laughrin's car and observed the barrel of a gun behind the driver's seat. He then stepped back from the car, ordered Mr. Laughrin and his passenger to place

their hands on the dashboard and remain motionless, and called for a backup police unit. When the other unit arrived, the officers directed Mr. Laughrin and his passenger to step out of the car and placed handcuffs on them. Officer Riley removed the gun, which turned out to be a sawed-off shotgun, from the car. During the stop Officer Riley had informed the police radio dispatcher of Mr. Laughrin's name and date of birth, and the dispatcher had responded that Mr. Laughrin had a valid license.

After he was indicted by the federal grand jury, Mr. Laughrin moved to suppress the shotgun. The district court denied the motion, stating that Officer Riley had reasonable suspicion to stop Mr. Laughrin: "He had had, by that time, 10 prior contacts approximately with the defendant and had stopped him previously for a suspended license. Given his prior record, it is not unreasonable for the officer to have concluded that, again, the defendant is driving on a suspended license." R. Vol. IV at 35-36. On appeal Mr. Laughrin argues that Officer Riley's knowledge of his prior driving offenses was not sufficient to create reasonable suspicion that he was driving without a valid license on the day of the stop. We agree.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A traffic stop is a Fourth Amendment seizure,

*Delaware v. Prouse*, 440 U.S. 648, 653 (1979), but it does not violate the Fourth Amendment if it "is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring," *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (internal quotation marks omitted). When reviewing a district court's ruling on a motion to suppress, "we accept the trial court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to the district court's finding." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (internal quotation marks and brackets omitted). "We review de novo the ultimate determination of the reasonableness of the [traffic] stop under the Fourth Amendment." *Id*. (internal quotation marks and brackets omitted).

We recognize that reasonable suspicion is a "fluid concept[ ] that take[s] [its] substantive content from the particular context[ ] in which [it is] being assessed," *Ornelas v. United States*, 517 U.S. 690, 696 (1996), and whether there is reasonable suspicion of criminal activity depends on the totality of the circumstances in a particular case. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). But "knowledge of a person's prior criminal involvement . . . is alone insufficient to give rise to the requisite reasonable suspicion." *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994). *Accord United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005); *United States v. Artez*, 389 F.3d 1106, 1114

(10th Cir. 2004); *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000); *United States v. Davis*, 94 F.3d 1465, 1469 (10th Cir. 1996). "If the law were otherwise, any person with any sort of criminal record—or even worse, a person with arrests but no convictions—could be subjected to [an] investigative stop by a law enforcement officer at any time without the need for any other justification at all." *Sandoval*, 29 F.3d at 543. To find reasonable suspicion in this case could violate a basic precept that law-enforcement officers not disturb a free person's liberty solely because of a criminal record. Under the Fourth Amendment our society does not allow police officers to "round up the usual suspects."

It might be argued that Officer Riley had reasonable suspicion to stop Mr. Laughrin based not on his *criminal history* of driving without a valid license, but on the *ongoing violation* of driving without a valid license—that Mr. Laughrin was still engaged in the same offense that he had been stopped for before. But whether it is reasonable to believe that Mr. Laughrin has continued to drive without a license depends on the length of time since he was last found to be driving without a license. Other circuits have upheld stops for driving without a license based on the officer's knowledge that the motorist had no valid license a week before, *United States v. Hope*, 906 F.2d 254, 258 (7th Cir. 1990), or 22 days earlier, *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004). Twenty-two days is significantly less than 22 weeks. Had Officer Riley testified to the

-6-

length of the prior suspension, we might be able to affirm the district court's determination that he had reasonable suspicion. Otherwise, however, Officer Riley's information was too stale to justify stopping Mr. Laughrin on the belief that a suspension was still in effect.

## II. SENTENCE ENHANCEMENT

Because Mr. Laughrin does not challenge his convictions on three of the weapons charges against him, we must now turn to his challenge to his sentence. The shotgun that Officer Riley seized from Mr. Laughrin's car did not have a serial number imprinted on it. It was manufactured before 1969, the year serial numbers became required by law, *see* Anthony A. Braga, et al., The Illegal Supply of Firearms, 2002 Crime & Just. 319, 322, and had never borne a serial number. In sentencing Mr. Laughrin, however, the district court applied United States Sentencing Guidelines (USSG) § 2K2.1(b)(4), which requires a two-level increase in the base offense level if the firearm at issue "was stolen, or had an altered or obliterated serial number." Mr. Laughrin argues now, as he did in district court, that the two-level increase was error because the shotgun never had a serial number and it was thus impossible to alter or obliterate it. Mr. Laughrin was sentenced before the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005). "Therefore, we apply the pre-*Booker* standard of review here."

*United States v. Souser*, 405 F.3d 1162, 1165 (10th Cir. 2005). We "review de novo the district court's legal interpretation of the Sentencing Guidelines." *United States v. Cardena-Garcia*, 362 F.3d 663, 665 (10th Cir. 2004) (internal quotation marks, brackets, and ellipses omitted).

Both the Second and Ninth Circuits have held that the clear language of USSG § 2K2.1(b)(4) prohibits its application when the defendant possessed a weapon that had never borne a serial number. *See United States v. Bakhtiari*, 913 F.2d 1053, 1063 (2d Cir. 1990) (homemade silencer); *United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2001) (same). The government challenges the reasoning of *Bakhtiari* and *Seesing*, arguing that the manufacturer of a weapon who neglects to affix a serial number should be treated identically to someone who removes a serial number from a weapon manufactured by someone else. The court in *Bakhtiari* acknowledged the policy argument in favor of such equivalent treatment but decided that it was bound by the guidelines language:

> To be sure, the government's position on this score has some logical force—a court should treat similarly on the one hand a defendant who affirmatively obliterates a serial number and, on the other, one who personally designs a silencer [or fashions a sawed-off shotgun] and never affixes a serial number in the first place. We are bound, however, by the provision the Sentencing Commission did in fact adopt, and that provision specifically applies only to those firearms which "[were] stolen or [have] an altered or obliterated serial number."

*Bakhtiari*, 913 F.2d at 1063. We agree.

Moreover, even if we would have been inclined to disagree with the decisions by our fellow circuits as a matter of first impression, their persuasive force has been magnified by the Sentencing Commission's apparent agreement with these decisions. The Sentencing Commission has amended § 2K2.1 twelve times since *Bakhtiari* was decided in September 1990. *See* USSG § 2K2.1 historical note (2005). None of those amendments changed the language of subsection (b)(4). In addition, in 1993 the Commission specifically addressed § 2K2.1(b)(4) by adding what is now application note 16, which states that the § 2K2.1(b)(4) enhancement applies regardless of the defendant's knowledge that the firearm was stolen or had an altered or obliterated serial number, but it made no reference to firearms that never had a serial number. *See id*. app. C vol. I, amd. 478 (2003). "We . . . interpret and apply the sentencing guidelines in a manner consistent with the Sentencing Commission's intent." *United States v. O'Flanagan*, 339 F.3d 1229, 1235 (10th Cir. 2003). "A fundamental rule of statutory construction is that we presume Congress, when reenacting a statute without change, adopts uniform judicial interpretations given a particular word, phrase, or provision." *Id*. And this same approach applies when construing the guidelines. *See id*. The Sentencing Commission's failure to make any change in the language of § 2K2.1(b)(4) in the years since *Bakhtiari* and *Seesing* were

decided "suggest[s] that the Sentencing Commission was content with [those] interpretation[s]." *Id.* at 1235.

The government also contends that *United States v. Webb*, 49 F.3d 636, 640 (10th Cir. 1995) (*Webb I*); *appeal after remand,* 98 F.3d 585 (10th Cir. 1996) (*Webb II*), holds that the § 2K2.1(b)(4) enhancement applies to weapons never imprinted with serial numbers. But our opinion in that case did not address the merits of the issue. *See Webb II*, 98 F.3d at 588-89.

The district court erred in applying § 2K2.1(b)(4) to Mr. Laughrin.


## III. CONCLUSION

We REVERSE the district court's denial of the motion to suppress evidence; REVERSE the convictions on Counts I, III, and IV; and REMAND to the district court with instructions to vacate the sentence and conduct further proceedings in accordance with this opinion.