SILBERMAN, Senior Circuit Judge,
dissenting:
In my view, the majority opinion is unfortunate. It not only breaks with circuit precedent, it is quite confusing regarding the appropriate scope of review we should apply in reviewing district court factual determinations — particularly inferences drawn from historical facts.
To be sure, the overall question whether Officer Olszak had a reasonable suspicion to stop the Appellant is a question of law, although we must keep in mind it is deferential to officers because it asks only whether their actions are reasonable as police officers in light of their training and experience, not whether judges, putting *642 themselves in the same position, would regard the actions of the defendant as suspicious. (Indeed, even our cases relied on by the majority uniformly affirm district courts’ approval of investigative stops.) But — and this is a crucial point— subordinate determinations of historical facts as well as inferences from those historical facts are fact-findings for the district judge. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (“We hold as a general matter determinations of reasonable suspicion ... should be reviewed de novo on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from, those facts by resident judges and local law enforcement officers.” (emphasis added)).
At the outset, I think even the undisputed facts in this case support the district court’s determination that Officer Olszak had a reasonable suspicion justifying the seizure of Appellant Castle. Those facts are:
1. The officers knew that the 100 block of Yuma Street was a site of significant PCP distribution and use.
2. The officers patrolled the area three or four times a week in, an unmarked — though distinctive — pickup truck with Florida license plates. They testified (credibly, according to the district judge) that they patrolled the area so regularly that neighborhood people recognized their vehicle and some people would actually act as lookouts.
3. Appellant and a companion were walking at a fast pace from 133 Yuma Street, an address known for PCP distribution and criminal activity-
4. Appellant continued to walk down a narrow alley next to an abandoned house and bent over with one leg up in the air, sort of a backward kick, apparently in the manner as if one were dropping something, behind a U-Haul vehicle (what the majority refers to as “furtive movements”).
5.Then Appellant inexplicably walked back out of the alley, toward the officer, at which point Officer Olszak . recognized him. Officer Olszak had seen Appellant “hangpng] out” in front of 133 Yuma with known PCP dealers on a number of previous occasions, and he recalled several prior PCP-related arrests and incidents involving Appellant, including multiple occasions on which Appellant had attempted to evade arrest by fleeing from the police and to destroy evidence of PCP distribution and possession by pouring it on the ground.
See United States v. Castle, 53 F.Supp.3d 95, 99-101 (D.D.C. 2014).
To justify a Terry stop, an officer need only “observe!] unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.” Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The undisputed facts alone satisfy Terry’s standard. Appellant’s conduct was quite unusual; it is not commonplace to walk into an alley leading to a vacant backyard, lean over behind an abandoned vehicle with one leg raised as if to drop something (or pick something up), and then immediately turn around and come back (notwithstanding the majority’s assertion that it is “commonplace,” Majority Op. at 629). In any event, even relatively “normal” activity can be sufficient to arouse an officer’s suspicions. “A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct.” United States v. Arvizu, 534 U.S. 266, 277, 122 *643 S.Ct. 744, 151 L.Ed.2d 740 (2002). The suspicious conduct in Terry, for example, consisted only of men walking up and down a block several times, looking into a store window. 392 U.S. at 5-6, 88 S.Ct. 1868. The Court carefully distinguished the arrest standard — probable cause that a crime has been committed - from the lower standard of reasonable suspicion necessary for an investigative stop.[1] Id. at 26, 88 S.Ct. 1868.
The majority, nevertheless, asserts that Appellant’s activity was “entirely mundane” and “not suspicious,” (presumably as a matter of law?), Majority Op. at 629 but it reaches that conclusion by examining each factor alone without considering the effect when they are all combined. While each individual factor may be “susceptible of innocent explanation, and some factors are more probative than others[, tjaken together,” Arvizu, 534 U.S. at 277, 122 S.Ct. 744, they can suffice to form the particularized and objective basis required by Terry. See also United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (“In evaluating the validity of a [Terry] stop ..., we must consider ‘the totality of the circumstances — the whole picture.’ ” (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981))). The additional circumstances here do just that.
First, the stop occurred in a high-crime area. The majority discounts this factor by noting that the high-crime nature of a neighborhood is merely a “contextual consideration! ]” that cannot demonstrate reasonable suspicion. Majority Op. at 636. But “officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). I do not disagree that location alone cannot be determinative, but it can be used in conjunction with other factors— such as the Appellant’s odd behavior — to establish reasonable suspicion, as is the case here.
What is more, once Officer Olszak recognized Appellant, Castle’s behavior that night — walking quickly from the PCP house down the alley, bending over as if he was dropping something, and then turning around and walking back toward Officer Olszak — looked particularly suspicious in light of his history. Officer Olszak knew Appellant hung around the PCP house with known PCP dealers, and knew Appellant had several prior PCP-related arrests, including incidents in which Appellant attempted to evade police and destroy evidence. At that point, it was not unreasonable for Officer Olszak to infer Appellant’s odd behavior was consistent with how he had behaved in the past when in possession of PCP. See United States v. Feliciano, 45 F.3d 1070, 1074 (7th Cir. 1995) (holding that “recent relevant criminal conduct ... is a permissible component of the articulable suspicion required for a Terry stop,” and collecting cases to that effect).
Again, the majority discounts this factor as merely corroborative, Majority Op. at 636, but that is exactly how Officer Olszak used this piece of information. His suspicions were not aroused solely because of Appellant’s criminal history (he was not “round[ing] up the usual suspects,” id. at *644 635 (quoting United States v. Laughrin, 438 F.3d 1245, 1247 (10th Cir. 2006)), but because of that criminal history in the context of the current situation: Olszak observed a man whom he knew had previously been arrested for PCP-related crimes, who attempted to destroy evidence and flee from police, quickly walk away from a building known for POP distribution, down a deserted alley to a vacant lot, and appear to drop something behind an abandoned U-Haul truck, then immediately turn around and come back. Compare United States v. Gordon, 722 F.2d 112, 114 (5th Cir. 1983) (per curiam) (reasonable suspicion to stop a motor home existed where officers identified driver as a member of a drug smuggling group, knew the motor home was registered to the same address as a motor home seized in an earlier drug arrest, and knew the group’s smuggling operations involved the use of motor homes). In other words, Officer Ols-zak did in fact “pair ... knowledge [of the Appellant’s criminal record] with some more concrete factors to demonstrate that there [is] a reasonable suspicion of current criminal activity.” Majority Op. at 636 (quoting United States v. Foster, 634 F.3d 243, 247 (4th Cir. 2011)) (internal quotation marks omitted) (third alteration in original).
The majority emphasizes that Appellant’s actions cannot be construed as furtive unless the government shows that Appellant and his companion recognized the police vehicle before Appellant walked down the alley. I think Appellant’s actions, paired with the circumstances, were unusual enough that reasonable suspicion existed regardless of whether the actions were prompted by knowledge of police presence, for the above reasons.
However, even were evidence of Appellant’s recognition of police presence necessary to satisfy Terry, that standard is met here. The majority insists the government did not provide sufficient evidence, describing a great number of hypothetical pieces of evidence that would more clearly demonstrate Appellant or his companion recognized the officers’ presence. Majority Op. at 629-30, 639-40. I concede the government made no showing that Appellant (or anyone else) pulled out a megaphone and announced to the neighborhood “J.O. J.O.,” or anything of that nature. But the government showed “a sufficient basis for the officers to believe they had been recognized.” See United States v. Brown, 334 F.3d 1161, 1168 (D.C. Cir. 2003). While that may sometimes take the form of very direct, clear evidence — the police announcing themselves, as in United States v. Johnson, 212 F.3d 1313, 1315 (D.C. Cir. 2000), or officer testimony that the individual’s eyes grew large at the sight of police, as in United States v. Edmonds, 240 F.3d 55, 57 (D.C. Cir. 2001), for example — as the majority seems to demand here, that is not always the case.
The majority’s own authority makes that point. In Brown, for example, the only evidence the government had of knowledge of police presence was circumstantial — the police were in uniform, their car was marked, another passenger had exited the vehicle several minutes prior, and one officer carried a lit flashlight as he approached — and the court acknowledged that the “furtive movements” the officers observed could have been “merely a coincidence.” 334 F.3d at 1168. After all, there was no evidence the vehicle’s occupants actually had observed these facts (indeed, they allegedly were distracted by “amorous activity,” id. at 1168 n. 5). Nevertheless, we held that “the possibility of such a coincidence d[id] not negate the officers’ reasonable suspicion and fear, nor d[id] the fact that the passenger’s behavior did not necessarily indicate criminal activity or prospective danger.” Id. at 1168.
*645 So too here. There was sufficient circumstantial evidence to allow Officer Ols-zak to reasonably conclude his presence had been noted, and Appellant’s actions constituted suspicious “furtive movements.” The district court found that the officers’ distinctive truck (with Florida license plates) was well-known in the neighborhood as a police vehicle, and that it was not unusual for people to act as lookouts and alert others to police presence. Additionally, traffic on Yuma Street is sparse given that it ends in a cul-de-sac, making the presence of any vehicle noticeable. In light of those circumstances, the district court concluded “it was not unreasonable for the officers to believe [Appellant] knew or suspected their vehicle was a police vehicle,” and that his walking “very quickly from the direction of 133 Yuma Street toward the vacant back yard area, suggested] to the officers that he was trying to evade their presence.” Castle, 53 F.Supp.3d at 100 (emphasis added). That is fact-finding based on inferences from the historical facts and bolstered by a credibility determination. The majority complains that “equating the awareness of ‘people in the neighborhood’ that the unmarked truck the officers drove was a police vehicle with a determination that the officers could reasonably believe that Appellant was aware of the officers’ truck on the evening in question,” is a “dubious assertion.” Majority Op. at 637-38. But this is nothing more than the majority quarreling with an inference which the officers and the district court were entitled to draw, and we, as an appellate court, must respect.
^
The important doctrinal point that divides me from the majority is the proper scope of review of the district court’s determination. It is black letter law that inferences drawn from historical fact are part and parcel of a district judge’s fact-finding — which may be disturbed by an appellate court only on a determination of clear error. In my view, the majority improperly cloaks an attack on the district judge’s fact-finding as a question of law. Compounding the problem, the majority refuses to say exactly what kind of error it has supposedly identified, instead declaring the district court’s conclusion “without support in the record” (suggesting clear factual error), “contrary to governing precedent” (suggesting legal error), “and inconsistent with the dictates of logic” (suggesting some other type of error entirely?). Majority Op. at 641. Thus, the majority at pages 629-30 and 631-32 conflates the roles of the police officer, the district judge, and the court of appeals. The overall question as to whether the officer’s stop of an individual is reasonable is clearly a question of law — but it is a question of law over which the district court and we defer to the police officer’s inferences. Subordinate to that overall legal question are questions of historical fact and inferences to be drawn from those facts. As an appellate court we must respect the district court’s resolution of those questions unless there is clear error. Ornelas, 517 U.S. at 699-700, 116 S.Ct. 1657.
The result of the court’s opinion, I fear, will be immense confusion on the part of district courts attempting to interpret and apply this Delphic — and seemingly inconsistent with circuit precedent — opinion. I respectfully dissent.

. While the analysis and holding in United States v. Edmonds is consistent with my view of this case, our opinion includes a stray comment suggesting Terry requires a belief that "the suspect is breaking, or is about to break, the law." 240 F.3d 55, 59 (D.C. Cir. 2001). But that is an overstatement. All Terry requires is that the officer suspect "criminal activity may be afoot.” 392 U.S. at 30, 88 S.Ct. 1868 (emphasis added). It is the probable cause standard that requires belief that a crime has been, is being, or is about to be committed. Id. at 26, 88 S.Ct. 1868; id. at 35, 88 S.Ct. 1868 (Douglas, J., dissenting).