FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT DALE SPENCE,

    Defendant - Appellant.

No. 20-6022
(D.C. No. 5:19-CR-00200-C-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.
_____

Robert Dale Spence pled guilty to possessing a firearm as a felon in violation of

18 U.S.C. § 922(g)(1). He pled on the condition that he could appeal the district court's

denial of his motion to suppress the evidence used against him. Police discovered the

firearm when Woodward Police Officer Christopher Gregory stopped a van in which Mr.

Spence was a passenger. Officer Gregory initiated the stop based on a belief that the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

1

driver, Tanya Baker, had a suspended license. He believed Ms. Baker's license was suspended because he knew she had driven on a suspended license four months earlier, and she had indicated as recently as one month earlier that she had not renewed her license.

Mr. Spence moved to suppress the evidence discovered in the traffic stop, arguing that Officer Gregory's information about Ms. Baker's license status was "stale" and that he thus lacked reasonable suspicion to stop the van. The district court denied the motion, and Mr. Spence appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*

#### 1. Ms. Baker's License Suspension

At the suppression hearing, Officer Gregory described the events through the traffic stop and arrest. On October 28, 2018, four months before the stop at issue in this case, he participated in a stop of Ms. Baker's van. Officers discovered that her driver's license was suspended.

Ms. Baker was incarcerated from December 14, 2018, to January 11, 2019. According to Officer Gregory, she told him while she was in jail that she planned to "clean up her life once she got out." ROA, Vol. II at 14. She asked him if he "would pull her over" if he "knew she had a suspended driver's license," even if "she was going to her job." *Id.* He responded that he would "still pull [her] over," driving without a

2

valid license was "still against the law," and that she "need[ed] to get [her] license back or get a taxi to take [her]." *Id.*

Officer Gregory also testified that he had discussed Ms. Baker's suspended license with other police officers. He said he had not heard from other officers that Ms. Baker's license was reinstated.

### 2. The Traffic Stop

On February 11, 2019, a member of Officer Gregory's department told him about a tip that Mr. Spence, who was a felon, was trying to sell a firearm. Two days later, Officer Gregory saw Ms. Baker and Mr. Spence standing outside a van at Ms. Baker's house. The van had the same license plate number as the van in the October 28, 2018 stop.

Officer Gregory "drove down the block to see if [Ms. Baker and Mr. Spence] were going to leave." *Id.* at 38. Later that day, he saw the van on the road and initiated a traffic stop. He reported that the reason for the stop was that Ms. Baker was driving with a suspended license. He said he "knew [the status of her license] beforehand" but did not check the license status immediately before the stop. *Id.* at 39. After initiating the stop, he called for backup and two other officers arrived.

Officer Gregory arrested Ms. Baker for driving with a suspended license. The other officers ordered Mr. Spence out of the car, searched him, found that he had a firearm, and arrested him.

B. *Procedural Background*

Mr. Spence moved to suppress all evidence taken from the van and from his person.[1]  The district court denied the motion.  Mr. Spence entered a conditional guilty plea to possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1).  The district court sentenced him to 77 months in prison followed by three years of supervised release.

## II. **DISCUSSION**

Mr. Spence appeals the denial of his motion to suppress.  He argues that Officer Gregory lacked reasonable suspicion to stop the van and thus violated the Fourth Amendment in obtaining the evidence used against him.  We disagree and affirm.

A. *Standard of Review*

In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous.  *See United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015).  We "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," *Ornelas v. United States*, 517 U.S. 690, 699 (1996), and "view the evidence in the light most favorable to the government," *Moore*, 795 F.3d at 1228.  We "review de novo the ultimate determination of reasonableness under the Fourth Amendment." *Id.* (emphasis and quotations omitted).

---

[1] In addition to contesting the validity of the stop, Mr. Spence challenged his removal from the car and subsequent detention.  He does not maintain those challenges on appeal.

4

"The government bears the burden of proving the reasonableness of [an] officer's suspicion." *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010).

B. *Legal Background*

1. **Traffic Stops**

The Fourth Amendment prohibits unreasonable searches and seizures by the government. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968); *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003).[2] "A routine traffic stop is considered a seizure . . . ." *Moore*, 795 F.3d at 1228. A traffic stop must be (1) "justified at its inception" and (2) "reasonably related in scope to the justifying circumstances." *See United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007) (quotations omitted).

"[A] traffic stop will be held reasonable when, under the totality of the circumstances, the officer bears a 'reasonable suspicion' that criminal activity 'may be afoot.'" *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). An officer must have "reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc) (quotations omitted).

---

[2] The Fourth Amendment's constitutional guarantees are "enforceable against the States through the Fourteenth [Amendment]." *Colorado v. Bannister*, 449 U.S. 1, 2 (1980) (per curiam).

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020). "[A]n officer need not rule out the possibility of innocent conduct; he or she simply must possess some minimal level of objective justification for making the stop." *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018) (quotations omitted). "Indeed, the resolution of particularized and objective yet still ambiguous—potentially lawful, potentially unlawful—facts is the central purpose of an investigative detention." *Cortez-Galaviz*, 495 F.3d at 1206. Whether an officer's suspicion is reasonable "does not depend on any one factor, but on the totality of the circumstances." *Simpson*, 609 F.3d at 1146.

"[T]imeliness of information is but one of many factors in the mix when assessing whether reasonable suspicion for an investigatory detention exists, and the relative importance of timeliness in that mix depends on the nature of the criminal activity at issue." *Cortez-Galaviz*, 495 F.3d at 1209. "[W]hen the legal infraction at issue typically wears on for days or weeks or months"—for example "driving without a license"— "rather than concludes quickly"—for example, "jaywalking or mugging"—"the timeliness of the information on which the government relies to effect an investigative detention recedes in importance compared to other factors, such as the type and duration of offense at issue." *Id.* Depending on the circumstances, therefore, an officer may reasonably suspect that a driver lacks a valid license, even if the information supporting

6

the suspicion is weeks old. *See, e.g.*, *United States v. Laughrin*, 438 F.3d 1245, 1248 (10th Cir. 2006) (finding no reasonable suspicion based on 22-week-old information, but noting that "[t]wenty-two days is significantly less than 22 weeks" in determining whether suspicion is reasonable).

2. **Cases**

In *Laughrin*, police stopped a driver whom they knew had driven with a suspended license 22 weeks before. We explained that "whether it is reasonable to believe that [a defendant] has continued to drive without a license depends on the length of time since he was last found to be driving without a license." *Id.* The officer lacked reasonable suspicion, we explained, because the "information [about the suspension] was too stale to justify stopping [him] on the belief that a suspension was still in effect." *Id.* We distinguished a Sixth Circuit case where the police knew the defendant had driven without a valid license 22 *days* before the stop, noting that "[t]wenty-two days is significantly less than 22 weeks." *Id.* (citing *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004)). We also said that "we might [have] be[en] able to affirm the district court's [finding of reasonable suspicion]" if the officer had "testified to the length of the prior suspension." *Id.*

In *Cortez-Galaviz*, police stopped a driver when his insurance information appeared as "not found" in a database updated 20 days before. "[W]e agree[d] with the district court that" the police had a reasonable suspicion, explaining that "a delay of 20 days between an alert and an officer's inquiry does not, by and of itself, nullify a traffic

stop on the basis of a 'not found' insurance report." 495 F.3d at 1209. We distinguished *Laughrin* because, "on the record before us," there was no basis "to find that 20 days approache[d] th[e] boundary" at which insurance information becomes stale. *Id.* We noted that "if [the defendant] had presented evidence that the information relied on by [the officer] was significantly older than 20 days, we might well have been confronted with a very different case." *Id.* at 1210.

The First Circuit addressed a similar issue in *United States v. Pierre*, 484 F.3d 75, 83 (1st Cir. 2007). It held an officer had reasonable suspicion that the defendant lacked a valid license five months after the officer learned the defendant's license had been suspended. The court observed that "[w]hen evaluating a claim of staleness, courts do not measure the timeliness of information simply by counting the number of days that have elapsed." *Id.* "Rather," it said, "a court must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *Id.*

The court distinguished *Laughrin* because the officer in *Pierre* "offered testimony indicating that [the defendant's] license had been suspended during [an] entire year[,] . . . suggest[ing] that [it] was suspended on an ongoing basis, rather than for a short period of time," and "that none of [the other] detectives ever informed him during conversations about [the defendant] of any change in [his] license status." *Id.* at 84; *see also Sandridge*, 385 F.3d at 1036 (finding reasonable suspicion based on three-week-old information about the defendant's driver's license status, because "there [we]re no facts

8

in the record suggesting that [the officer] should have assumed that [the defendant's] ongoing offense had ceased").

## C. *Analysis*

Officer Gregory had reasonable suspicion that Ms. Baker was driving without a valid license. We therefore affirm the denial of Mr. Spence's motion to suppress.

Officer Gregory learned Ms. Baker's license was suspended when he participated in a traffic stop of her car on October 28, 2018. While she was incarcerated between December 28, 2018 and January 11, 2019, she asked him if, after her release, he "would pull her over" if he "knew she had a suspended driver's license," even if "she was going to her job." ROA, Vol. II at 14. And when he discussed her suspended license with other police officers, nobody said her license had been reinstated. Viewed in the light most favorable to the Government, this evidence supports Officer Gregory's inferences that Ms. Baker still did not have a valid license when she was released from jail on January 11 and that she was not planning to obtain one. It thus supports the reasonable suspicion that she did not have a valid license when she was stopped 34 days later, on February 13.

This case resembles *Cortez-Galaviz*, where we held that 20-day-old information about the defendant's insurance status supported reasonable suspicion. Here, similarly, "the record before us" does not suggest 34 "days approache[d] th[e] boundary" at which information becomes stale. 495 F.3d at 1209. And this case does not resemble *Laughrin*, where we observed that license information was stale after 22 weeks but likely would not have been after 22 days. 438 F.3d at 1248.

9

Mr. Spence argues Officer Gregory lacked reasonable suspicion because he "did not testify as to the length of time Ms. Baker's license was suspended," so he did not know whether she had a habit of driving with a suspended license. Aplt. Br. at 13. But as of February 13, 2019, the date of the stop, Officer Gregory reasonably believed Ms. Baker had not obtained a valid license because her statements the previous month while incarcerated suggested she was not planning to do so. This information gave him at least a "minimal level of objective justification for making the stop." *Martinez*, 910 F.3d at 1313 (quotations omitted).

Mr. Spence also points out that Officer Gregory told Ms. Baker that he would "still pull [her] over" if she drove to work without a license. ROA, Vol. II at 14. He argues this "would have motivated [her] to restore her license before driving over a month later." Aplt. Br. at 13-14. But even if this is plausible, we must "view the evidence in the light most favorable to the government." *Moore*, 795 F.3d at 1228. Officer Gregory reasonably could have inferred from Ms. Baker's statement that she did not intend to obtain a valid license and wanted to assess the risks of driving without one. Even if the record leaves some room for doubt, "the [reasonable suspicion] standard requires . . . considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Glover*, 140 S. Ct. at 1187.

Finally, Mr. Spence argues "a reasonable officer would have taken a minute to request a check on [Ms. Baker's] license before seizing her and all the occupants of her

10

vehicle." Aplt. Br. at 14. But "an officer need not rule out the possibility of innocent conduct." *Martinez*, 910 F.3d at 1313 (quotations omitted). "Indeed, the resolution of particularized and objective yet still ambiguous—potentially lawful, potentially unlawful—facts is the central purpose of an investigative detention." *Cortez-Galaviz*, 495 F.3d at 1206. Officer Gregory had reasonable suspicion to stop Ms. Baker's van even if he could have done more to confirm his suspicion beforehand.

## III. **CONCLUSION**

We affirm the denial of Mr. Spence's motion to suppress.


Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

11